# Post Printing and Publishing Company *v.* Insurance Company of North America, Appellant.

*Insurance—Fire insurance—Bailment or conditional sale—Insurable interest.*

A policy of fire insurance on machinery provided that the "company shall not be liable beyond the cash value of the property at the time any loss or damage occurred . . . . and shall in no event exceed what it would then cost the insured to repair or replace the same with materials of like kind or quality." The insured had procured the machinery originally upon terms which were admitted to be a bailment. Subsequently the

insured exercised its option to buy at a price named in the lease, but in the agreement by which the option was exercised it was provided that the vendor should retain title to the machinery, and that it should only become the property of the insured when all the rent covenanted for and costs and charges were paid. Payment was to be made in cash and notes, and both cash and notes were delivered. The policy was made payable to the insured and the vendor of the machinery " as their respective interest may appear." The policy also recited that the title was vested in the vendors.

In an action upon the policy the vendors asserted no claim. *Held*, (1) that the title to the machinery after the exercise of the option of purchase was in the insured; (2) that the declaration in the contract of purchase that the title shall remain in the vendor until the notes are paid was a mere attempt to maintain a secret lien; (3) that the insured was entitled to receive the full value of the machines at the time of the loss.

Argued Nov. 15, 1898. Appeal, No. 216, Oct. T., 1898, by defendant, from judgment of C. P. No. 1, Allegheny County, June T., 1897, No. 911, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before COLLIER, J. The facts appear by the opinion of the Supreme Court.

Defendant's points and the answers thereto among others were as follows:

1. If the jury believe that the legal title to the linotype machines in question in the case was in the Mergenthaler Linotype Company at the time of the fire, then the plaintiff did not truly state its interest in the property so insured, but, on the contrary, concealed a material fact, a circumstance concerning the said subject of insurance, to wit: the fact that it was not the owner of said machines, and was only the bailee or lessee thereof, and, therefore, the verdict must be for the defendant. *Answer:* Refused. [1]

3. Under all the evidence in this case the verdict must be for the defendant. *Answer:* Refused. [2]

6. Under all the evidence, the Post Printing and Publishing Co., even if the machines could not be repaired and had to be replaced in all their parts, the said company had a right to, and was bound to require the Mergenthaler Linotype Company to replace said machines at the actual cost of replacement, and plaintiff cannot recover beyond such amount. *Answer:* Refused. [3]

The court charged in effect that the plaintiff could recover to the extent of $3,000 for each machine, provided that the ten machines were practically destroyed for the purpose of type-setting, and that the Post Company had to pay the Mergenthaler Company $30,000 for ten new machines. [4]

Verdict and judgment for plaintiff for $1,043.14.    Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*D. T. Watson*, with him *J. S. & E. G. Ferguson* and *Johns McCleave*, for appellant.—This case seems plainly to fall within the long line of cases in Pennsylvania, which began with Myers's App., 2 Pa. 463, and was followed by Rowe v. Sharp, 51 Pa. 26, Clark v. Jack, 7 Watts, 375, Rose et al. v. Story, 1 Pa. 190, Becker v. Smith, 59 Pa. 469, Brown Bros. & Co. v. Billington, 163 Pa. 76, Crist v. Kleber, 79 Pa. 290, Dando v. Foulds, 105 Pa. 74, Ditman v. Cottrell, 125 Pa. 606, and Ott v. Sweatman, 166 Pa. 217, all of which held that the intention of the parties was to govern where the litigation was between themselves, and the rights of creditors and third parties were not involved, that even where the rights of creditors and third parties were involved, the contract relations of the parties would determine the question as to whether the particular transaction constituted a sale or a bailment: Goss Printing Press Co. v. Jordan, 171 Pa. 474.

The following cases, very similar in facts to the case at bar, and identical in principle, show conclusively that the contracts in this case create a bailment, and not a conditional sale, and that the title remained in the Mergenthaler Company, and would be binding even against creditors and bona fide purchasers for value: Rowe v. Sharp, 51 Pa. 26 ; Goss Printing Press Co. v. Jordan, 171 Pa. 474; Edwards's App., 105 Pa. 103; Ditman v. Cottrell, 125 Pa. 606 ; Enlow v. Klein, 79 Pa. 488; Crist v. Kleber, 79 Pa. 290 ; Jones v. Wand, 1 Pa. Superior Ct. 269; Ferguson v. Rafferty, 128 Pa. 337.

But the rights of creditors or bona fide purchasers are not involved in this suit, and even if the court should construe the contract as creating a conditional sale rather than a bailment, it is nevertheless just as binding upon the parties thereto: Hine-

man v. Matthews, 138 Pa. 207 ; Holly Mfg. Co. v. New Chestei Water Co., 48 Fed. Rep. 887.

*Willis F. McCook,* for appellee.— Our position is that the contract between the Post Printing and Publishing Company and the Mergenthaler Linotype Company is a conditional sale and not a lease, hence plaintiff had an insurable title. But even if it were a lease with an option of purchase, having elected to buy and bound itself to pay the entire purchase money, and being further bound to repair or replace any parts " broken, worn out or damaged," it has an insurable interest for the full value of the machines, and not simply for the amount of purchase money paid : Farquhar v. McAlevy, 142 Pa. 240 ; Brunswick and Balke Co. v. Hoover, 95 Pa. 508 ; Ott v. Sweatman, 166 Pa. 219.

A vendee of property, real or personal, under a contract for title upon full payment of purchase money, has an insurable interest to the full value of the property, and the fact that his title is only equitable and not legal does not make the interest of the assured other than the " entire, unconditional and sole ownership : " Imperial Fire Ins. Co. v. Dunham, 117 Pa. 460.

But even if the instrument were a lease, the lessee being bound to maintain and repair all parts " broken, worn out or damaged and keep the same in every respect in good working order," it has an insurable title and interest to the full value of the machines : Imperial Fire Ins. Co. v. Murray, 73 Pa. 13 ; Roberts v. Firemen's Ins. Co., 165 Pa. 55 ; W. & A. Pipe Lines v. Home Ins. Co., 145 Pa. 346 ; Yost v. Ins. Co., 179 Pa. 381.

Opinion by Mr. Justice Dean, January 2, 1899 :

The defendant company, with some thirty other fire insurance companies, after March 12, 1894, and before February, 1897, insured the plaintiff against damage by fire, on a quantity of publishers' machinery and material, in the aggregate sum of $53,700 ; the amount of defendant's policy was $2,000. Part of the property insured consisted of ten Mergenthaler Linotype machines. There was a stipulation in each policy as follows :

" This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurred, and the loss or damage shall be ascertained or estimated accord-

ing to such actual cash value, and with proper deduction for depreciation however caused; and shall in no event exceed what it would then cost the insured to repair or replace the same with materials of like kind or quality."

On February 14, 1897, a fire destroyed a large part of all the property covered by the policies and if it did not completely destroy, it very seriously damaged the ten typesetting machines. In adjusting the loss between insurers and insured, there was no dispute, except as to the extent of the insurer's liability on these ten machines. There had been two contracts by the Publishing Co. with the Mergenthaler Co. with reference to them, each of which fixed the price at $3,000 per machine; nor could the Publishing Co. or any other purchaser replace them at a less price, for, both by the protection afforded by the patents covering the different parts of the machine, and because the Mergenthaler Co. alone, was prepared to manufacture them, that company had a monopoly of their sale. At the trial in the court below, there was some conflict in the evidence as to whether they had been so damaged as to be incapable of repair, and also some evidence tending to show they could have been repaired for less than $700 each. The plaintiff alleged and offered evidence tending to show they could not have been repaired so as to do the work required of them, and therefore, it had replaced them with new ones, at a cost of $3,000 per machine, or an entire cost of $30,000. The jury on the conflicting evidence, as between these two parties, found for the plaintiff; that is, that the machines were wholly destroyed, and that the cost of replacing them was $30,000 or $3,000 each.

But defendant further alleged the real owner of the machines, and the party to their contract of indemnity, was the Mergenthaler Co.; and to this company under the stipulations in its policy, it must make good the loss; and further, that this loss to the manufacturer and seller of the machines, was less than $1,000 each, because, although selling them for not less than $3,000 the net profit was $2,000, for the cost of manufacture did not exceed $1,000. Therefore if under the facts and written instruments, the party insured was the Mergenthaler Co. the insurer was only, under the clause already quoted, bound to pay what would be the "cost to the insured to repair or replace the same with materials of like kind or quality," making the loss to the insur-

ers $20,000 less than if the party indemnified be the Post Publishing Co. As the finding of fact by the jury is that the loss as to each machine is total, the only question left for determination is who is indemnified by the policy?

On March 12, 1894, by written contract the Mergenthaler Co. delivered into the possession of the Publishing Co. the machines. It is not worth while discussing the terms of this lease, because both parties agree that it was a mere bailment, and though the possession was in the Publishing Co., the title was in the Mergenthaler Co. This contract of bailment continued until May 18, 1895, when a new one was entered into. By the use of the machines for months, the plaintiff had become satisfied of their merits, and as lessee by the first contract, it had the option to buy at the price of $3,000 for each machine and have credited on the purchase price the rental theretofore paid. The new contract provided that the Publishing Co. should continue in the use of the machines theretofore delivered to it, until May 20, 1897, and for the possession and use thereof should pay to the Mergenthaler Co. $25,000 in cash and notes, the last note falling due May 20, 1897, and interest to be paid on all the notes. Including the rental of $5,000 already paid, this made the whole sum payable on the last contract $30,000. The cash and notes were delivered. It was further stipulated the Publishing Co. would keep the machines insured at a sum of not less than $1,000 on each machine, pay the premium and deliver the policies to the Mergenthaler Co.; and, further, that the title to and property in the machines should remain in the Mergenthaler Co.; provided, that they should become the property of the Publishing Co. when all the rent covenanted for and costs and charges were paid. On the face of each policy was this indorsement:

" Loss, if any, on typesetting machines as insured under first item of this policy, payable to the assured and the Mergenthaler Linotype Co. as their respective interests may appear.

" It is understood that the title to the typesetting machines insured under the first item of this policy is vested in the Mergenthaler Linotype Co. Loss if any on same payable to the assured, and the said Mergenthaler Linotype Co. as their respective interests may at the time appear."

In whom was the title to this property at the time of the fire?

The bailment was ended by the second contract, when the lessee exercised its right to purchase; the amount to be paid was absolutely $30,000, for that was the sum evidenced by the cash and notes, and the amount to be paid when the lessee exercised the option to purchase; no covenant is exacted for their return from the Publishing Co., none for further assurance of title by the Mergenthaler Co. when the notes are paid. Then the letter of the Mergenthaler Co. to the Publishing Co. inclosing the contract to be signed dated April 8, 1895, which says: "We hand you herewith two copies of the proposed contract of sale for ten Linotype Machines, heretofore leased to you, as agreed upon with Mr. Barr some time since," shows at once the intention of the parties, to turn the lease into a sale, as provided by the first contract. As to creditors of the vendee, although no actual fraud was contemplated, the law would have held it constructively fraudulent as to them, for the title and possession of the chattel were in the vendee, with a secret lien for the purchase money in the vendor and the machines would have been subject to seizure and sale at the suit of creditors. The declaration that the title shall remain in the vendor until the notes are paid, with no stipulation for the return of the property, was a mere attempt to maintain a secret lien: Farquhar v. McAlevy, 142 Pa. 240; Stephens v. Gifford, 137 Pa. 219; Summerson v. Hicks, 134 Pa. 567. Whether, as between themselves equity would have sustained a lien for any portion of the purchase money, it is not necessary to inquire for that is not the question before us; it will be time enough for that when the Mergenthaler Co. attempts to enforce any supposed lien it has against plaintiff.

Nor does the stipulation on the policy that the loss, if any, shall be paid to the assured and the Mergenthaler Co. as their respective interests at the time may appear, affect the right of the plaintiff to its judgment. This worked no change in the title; is but the usual stipulation by the mortgagor of insured property to protect his mortgage creditor; it does not affect the liability of the insurer for the amount of his policy nor the right of the assured, the holder of the legal title to recover; if the insurer, the stakeholder, wants to avoid risk from dividing the sum and paying to each as his interest appears, he can pay the money into court, and that tribunal will adjust the equities.

So far as appears, the Mergenthaler Co. asserts no claim on its supposed chattel lien or mortgage, it having been paid all of the purchase money at the date of the fire except $8,287.50.

There is nothing further in the case requiring discussion.

All the assignments of error are overruled and the judgment is affirmed.